IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RICHARD GARAY, individually
and d/b/a/ GARAY ENTERPRISES,

        Plaintiff,

vs.                                    Case No. CV 05-781 JP/CEG

UNITED STATES SMALL
BUSINESS ADMINISTRATION,

        Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

On February 27, 2006, Plaintiff Richard Garay filed an Opening Brief on the Merits ("Opening Brief") (Doc. No. 11). In the Opening Brief, Plaintiff requested judicial review of a final decision by the United States Small Business Administration ("SBA") denying his firm Garay Enterprises' application for admission into the SBA's 8(a) Business Development Program. Defendant SBA filed a Response Brief on the Merits ("Response Brief") on April 13, 2006 (Doc. No. 12). Plaintiff did not file a reply brief. Review is governed by the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.* Having considered the administrative record, briefs, and relevant law, the Court finds that the SBA's final decision should be affirmed.

*I. Statutory and Regulatory Background*

The SBA's 8(a) Business Development Program was enacted in its present form by the

Small Business Act,[1] which empowers the SBA:

> whenever it determines such action is necessary or appropriate--
> (A) to enter into contracts with the United States Government and any department, agency, or officer thereof . . . [and]
> (B) to arrange for the performance of such procurement contracts by negotiating or otherwise letting subcontracts to socially and economically disadvantaged small business concerns . . . .

15 U.S.C. § 637(a)(1)(A) and (B).[2] The stated policy of the Small Business Act is to "aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns . . . ." 15 U.S.C. § 631(a). To that end, firms "owned and controlled by socially and economically disadvantaged individuals," 15 U.S.C. § 637(a)(1)(C), may apply to participate in the Business Development Program which is authorized by the SBA "to assist eligible small disadvantaged business concerns compete in the American economy . . . ." 13 C.F.R. § 124.1. *See also* 15 U.S.C. § 636(j).

In order to qualify for the Business Development Program, an applicant firm "must be in

---

[1] Pub. L. No. 85-536, 72 Stat. 384 (1958) (codified as amended at 15 U.S.C. §§ 631-657).

[2] Section 637(a), in conjunction with § 636(j)(10)-(16), constitutes what is commonly referred to as the 8(a) Program. 48 C.F.R. § 19.800 explains:
(a) Section 8(a) of the Small Business Act (15 U.S.C. 637(a)) established a program that authorizes the Small Business Administration (SBA) to enter into all types of contracts with other agencies and let subcontracts for performing those contracts to firms eligible for program participation. The SBA's subcontractors are referred to as '8(a) contractors.'
(b) Contracts may be awarded to the SBA for performance by eligible 8(a) firms on either a sole source or competitive basis.
(c) When, acting under the authority of the program, the SBA certifies to an agency that the SBA is competent and responsible to perform a specific contract, the contracting officer is authorized, in the contracting officer's discretion, to award the contract to the SBA based upon mutually agreeable terms and conditions.
(d) The SBA refers to this program as the 8(a) Business Development (BD) Program.
48 C.F.R. § 19.800(a)-(d) (2005).

business . . . for at least two full years immediately prior to the date of its 8(a) [Business

Development] application, unless a waiver for this requirement is granted . . . ."  13 C.F.R. §

124.107.  Applicants must also demonstrate, *inter alia*, that their firms are "unconditionally

owned and controlled by one or more socially and economically disadvantaged individuals" and

have "potential for success."  13 C.F.R. § 124.101.  Plaintiff's challenges to the SBA's

determinations on waiver of the two years in business requirement ("two-year waiver") and

Plaintiff's "potential for success" bring the parties before this Court.

## II.  Administrative Record

On October 14, 2004, Plaintiff submitted his firm's application for admission to the SBA's

Business Development Program.  (AR[3] 172-89).  In a letter dated October 20, 2004, the SBA

responded to Plaintiff's application, giving its initial assessment that Plaintiff did "not appear to be

eligible for the 8(a) BD Program."  (AR 169).  The SBA's assessment was based in part on

Plaintiff's "lack of revenue generated for two consecutive years in the industry" and

"questionable" financial capacity and operating history.  *Id.*  In addition, the SBA expressed

concern over Mr. Garay's apparent lack of full-time devotion to Garay Enterprises, his uncertain

status as a member of a disadvantaged group, and whether Plaintiff's net worth was less than

$250,000.  (AR 169-70).  The SBA specifically requested that Plaintiff "provide documentation

in the above questioned area(s) to demonstrate [he] meet[s] the eligibility issue(s) raised by SBA,"

with the primary issue to be addressed being whether he qualified for waiver of the two years in

business requirement.  *Id.*  The SBA expressly detailed the conditions of the waiver, including

---

[3] References to AR are to the Administrative Record lodged with the Court on November
10, 2005 (Doc. No. 8).

demonstration of management experience, likelihood for success, and a record of successful performance on previous contracts. *Id*. Plaintiff was given fifteen days to provide all the necessary documentation to reinstate review of his application.

On November 3, 2004 Plaintiff submitted his explanations and additional documentation to the SBA and requested that the SBA reinstate review of the application. (AR 126-167). In an effort to address the SBA's concerns, Plaintiff made a number of representations. First, Mr. Garay stated that he did in fact belong to a socially disadvantaged group (Hispanic Americans) and included as evidence thereof a certification from the New Mexico Department of Transportation (AR 131) and a copy of his birth certificate. (AR 132). Next, Plaintiff asserted that his net worth was below the maximum of $250,000 and included a personal financial statement demonstrating this. (AR 137). Plaintiff then noted that he had been operating Garay Enterprises continuously since 1989, though he had become involved in a separate business venture in 2002 and 2003. (AR 127). As evidence of the applicability of the two-year waiver, Plaintiff included various contract documents from 1989 through 1993 (AR 138-61), documents relating to a purchase order in 1995 (AR 148-51) and a purchase order in 1996 (AR 144-47), a balance sheet demonstrating his adequacy of capital (AR 164), his resume (AR 163), and an equipment inventory (AR 165). Finally, Plaintiff appended documentation showing the suspension of business of Garay Construction Co., Inc.[4] as evidence of Mr. Garay's commitment to Garay Enterprises. (AR 166-67). Plaintiff added that he desired entry into the Business Development Program "[b]ecause of unsuccessful construction bids and opportunities to this

---

[4] According to Mr. Garay, Garay Construction Co., Inc., is a "family corporation" headed by his father, and entirely distinct from Garay Enterprises. (AR 114, 129).

4

point . . . ."  (AR 127).

After evaluating Plaintiff's explanations and documentation, the SBA reiterated many of

its prior concerns relating to Plaintiff's eligibility for the 8(a) Business Development Program.

These concerns were outlined in two letters from the SBA dated November 22, 2004 and

December 20, 2004.[5]  (AR 121-24).  The SBA continued to question Plaintiff's full time devotion

to the firm and detailed its belief that Plaintiff still did not satisfy elements "C," "D," and "E" for

waiver of the two years in business requirement.  (AR 121).  More specifically, the SBA stated

that Plaintiff did not seem to have adequate capital, a record of successful performance on

contracts, or the ability to timely obtain the personnel, facilities, and equipment needed to perform

on business contracts.  *Id.*  Apart from Plaintiff's inability to qualify for the two-year waiver, the

SBA also noted that Plaintiff had not shown "financial potential for success" and did not have a

recent operating history, with no performance on any contracts between 2001 and 2004, and no

revenues generated whatsoever between 2002 and 2004.  (AR 122).  Therefore, the SBA once

again requested that Plaintiff respond to its concerns and submit additional documentation

demonstrating Plaintiff's eligibility for the Business Development Program.  *Id.*

On December 1, 2004, Plaintiff responded to the SBA's letter.  (AR 112-19).  First,

Plaintiff discussed the firm's balance sheet, pointing out that the firm's capital was below

$250,000, as required.  (AR 112).  Second, Plaintiff went on to argue that the contract documents

---

[5] It is unclear from the Administrative Record whether both of these letters were
transmitted to Plaintiff.  The letters are substantively almost identical, with the only notable
difference being that the November letter states that Plaintiff had not satisfied element "E" of the
two-year waiver requirements, while the December letter does not express this finding.  Because
Plaintiff addresses all of the issues raised in both letters in his subsequent response, the Court will
treat these letters as one communication from the SBA.

he had submitted referencing work from 1989 to 1993 (AR 138-61) should be deemed sufficient to show Plaintiff's record of successful performance on contracts.  (AR 112-13).  Plaintiff also included a "Project and Job List" (AR 115) which lists the names and very brief descriptions of projects completed as recently as 1999.  Among the jobs on the list were work done for Lackey Chevrolet Dealership in 1995 and 1997.  *Id*.  Third, Plaintiff submitted recent letters of recommendation from (a) Lorne Bay of New Mexico State University for work performed in 1990; (b) Stanley Chitwood of James Hamilton Construction for work done in 1992; (c) Gerald Lackey, formerly of Lackey Chevrolet Dealership, for work done at an unspecified time; and (d) Robert Estrada of Roberto's Mexican Restaurant, also for work done at an unspecified time.  (AR 116-19).  Fourth, Plaintiff stated that his equipment inventory was sufficient and detailed his experience in hiring personnel and renting work facilities.  (AR 113).  Fifth, Plaintiff explained certain personal circumstances over the past several years, including Mr. Garay's parents' health issues, which limited Plaintiff's ability to pursue work from 1999 through part of 2001.  (AR 113-14).  Sixth, Plaintiff stated that he had been "actively pursuing and working with prospective clients [and] bidding unsuccessfully on jobs" in the year prior to his application to the Business Development Program.  (AR 114).  Finally, in defense of his financial potential for success and operating history, Plaintiff argued that his certification as a Disadvantaged Business Enterprise by the New Mexico Department of Transportation was evidence of both of these criteria.  *Id*.  On December 20, 2004, New Mexico State Senator Ben D. Altamirano sent a letter of support on behalf of Plaintiff to the SBA.  (AR 109).

On February 7, 2005, the SBA wrote to Plaintiff informing him that following "a thorough review of the information [he] submitted for admission to the 8(a) Business Development (BD)

6

Program," Plaintiff's application would be denied.  (AR 101-07).  The SBA's decision was based

on three conclusions.  First, referencing language from 13 C.F.R. § 124.107, the SBA determined

that Plaintiff did "not have the necessary operating history and financing necessary to perform

successfully in the 8(a) program."  (AR 101).  In support of this conclusion, the SBA noted that

Plaintiff's "last known performance of work . . . dates back to 1993 as indicated by the copies of

contracts" Plaintiff submitted to the SBA, and that "[b]ased on the lack of operations from that

period to date, the SBA [was] unable to conclude that [Plaintiff had] a recent enough operating

history to demonstrate potential for success."  *Id*.  Furthermore, the SBA observed that Plaintiff's

lack of financing capacity was "based on limited working capital" as reported by Plaintiff and the

"lack of information as to the availability of a current financing source."  (AR 101-02).

Next, the SBA, again referencing 13 C.F.R. § 124.107, concluded that Plaintiff had "not

been in business for a two-year period as required by program regulations" and did not satisfy the

final three elements for waiver of this requirement.  (AR 102).  According to the SBA, Plaintiff

had failed to meet the requirements for waiver because of the following:

> Substantial Business Management: Applicant operated the applicant firm over 10 years
> ago without any indications of employment or other business activity since that time.
> Substantial business management background is not indicated based on the inactivity of
> the applicant for a sustained period.
> . . .
> Financing: Firm has $4,400 in working capital and no indications of external financing.
> Due to the construction industry requiring more financing than indicated, this waiver is not
> met.
>
> Successful Track Record: Applicant was required to provide copies of invoices/contracts
> to evidence a successful track record as well as letters of reference.  Applicant could not
> produce any current contracts/invoices.  Firm has been dormant for over 10 years.  He did
> provide copies of contracts/invoices for minimal work performed 10 years ago as well as a
> letter of reference from that period.  However, without any operations in the last 10 years,
> particularly in the immediate period prior to submission of an application, this waiver is

7

not met.

Business Requisites: Based on the lack of operations and minimal financing, this waiver is not met.

(AR 106-07).  The SBA restated its position that it could not conclude "that work performed over 10 years ago is sufficient to demonstrate a current successful track record."  (AR 103).

Finally, citing 13 C.F.R. § 124.106, the SBA determined that it could not reasonably conclude that Mr. Garay, "the individual upon whom eligibility is based," devoted himself full-time to the management of Garay Enterprises because his resume indicated 1989 as the ending period for Garay Enterprises' operations.  (AR 103).  The SBA concluded its letter by providing Plaintiff with an opportunity to have his application reconsidered, and listed the evidence and documents that would be required for a reexamination.  *Id.*

On March 16, 2005 U.S. Senator Pete V. Domenici wrote to the SBA on behalf of Plaintiff requesting that the SBA review Plaintiff's application thoroughly.  (AR 89).  Attached to this letter was correspondence from Plaintiff to Senator Domenici explaining Plaintiff's understanding of the application process and giving Plaintiff's refutations of the reasons the SBA had offered for its rejection of Plaintiff's application.  (AR 90-95).  Plaintiff also noted in his correspondence with the Senator that "[e]ven though I have been unsuccessful in my bidding attempts during 2003 and 2004, I have been very busy putting in long hours and even driving long distances where an opportunity and project may exist."  (AR 95).

On March 21, 2005 Plaintiff requested reconsideration of his application to the 8(a) Business Development Program and responded to the three bases for rejection of his application. (AR 13-87).  First, Plaintiff argued that he had adequately demonstrated work completed through

1999 and accused the SBA of not properly reviewing his application materials, asserting as an example that the recommendation letter from Gerald Lackey was evidence of work performed by Plaintiff through 1997.  (AR 13).  Thereafter, Plaintiff noted that he was "unsuccessful in 1998 and 1999, of being awarded commercial projects," but that he had been engaged in bidding on commercial jobs and had taken on residential building contracts prior to his family's medical issues.  (AR 14).  In response to the SBA's determination on his lack of financing capacity, Plaintiff submitted a revised balance sheet and statements showing that Plaintiff possessed $171,849 in total assets.  (AR 14).

Second, Plaintiff contended that he did in fact meet the criteria for waiver of the two years in business requirement detailed in 13 C.F.R. § 124.107(b).  In addressing the three elements which the SBA stated had not been met (13 C.F.R. § 124.107(b)(1)(iii)-(v)), Plaintiff argued that the information on his revised balance sheet, combined with a $25,000 line of credit and his ability to sell a privately owned airplane showed that he had satisfied condition (iii).  (AR 14-15).  Plaintiff then asserted that the evidence he had previously provided concerning Garay Enterprises' operating history from 1989 satisfied element (iv).  (AR 15).  As for element (v), Plaintiff stated that Garay Enterprises' certification as a Disadvantaged Business Enterprise by the New Mexico Department of Transportation (AR 79), evidence of which Plaintiff had previously submitted to the SBA, in conjunction with additional documentation from suppliers and equipment rental establishments, was sufficient to meet the conditions of element (v).  (AR 15).

Lastly, Plaintiff again described the distinction between Garay Enterprises and Mr. Garay's father's company, Garay Construction Co., Inc., and stated that Mr. Garay was devoted full time to Garay Enterprises.  *Id*.  In his resubmitted application, Plaintiff attached additional

documentation including a new balance sheet, income tax return, and revised resume.  (AR 17-87).

The SBA reviewed Plaintiff's resubmitted application and prepared an analysis on March 24, 2005 of Plaintiff's responses to the SBA's concerns.  (AR 4-9).  In its review, the SBA concluded that Plaintiff appeared to have overcome the SBA's concerns regarding: (a) the two-year waiver elements of adequate financing and ability to obtain business requisites (AR 6); and (b) Plaintiff's full-time devotion to Garay Enterprises.  *Id*.  However, the SBA maintained that Plaintiff did not have a sufficient operating history to demonstrate potential for success:

> [T]he critical issue regarding lack of a track record remains.  The firm's operating history ceased in 1993.  The firm has been dormant since that time (12 years) . . . While he has provided a listing of projects he claims to have completed, the last of which ended in 1999, the latest invoice provided is dated 2/18/1993.  No evidence of the later years [sic] operations has been provided.  Therefore, based on the lack of operations for the last 12 years, the firm's operational history is not indicated.

(AR 5).  Likewise, the SBA confirmed that Plaintiff still did not satisfy element (iv) of the two-year waiver requirements because Plaintiff did not have a record of successful performance:

> [T]he applicant firm's last known performance dates back to 1993.  Applicant claims he worked home building projects in 1998/1999, however, as noted, of the contracts/invoices provided, the latest dated one was 2/18/1993.  Without any indicated work to date from that period to now, the applicant firm has not shown a successful recent track record.  All letters of reference refer to work done in that time period as well.  Due to the lack of recent operations by the firm, the firm has not shown a successful track record of performance as required under 13 C.F.R. [§] 124.107(B)(2) [sic].[6]

(AR 6).  Consequently, the SBA concluded that Plaintiff's resubmitted application had not addressed all of the agency's concerns.

On April 7, 2005 the SBA notified Plaintiff that "insufficient evidence was provided to

_____

[6] The correct provision is 13 C.F.R. § 124.107(B)(1)(iv).

overcome the reasons for declining the application." (AR 2). The SBA informed Plaintiff that there were two reasons for rejection of his application upon reconsideration: first, Plaintiff had not demonstrated an "operating history and recent track record of successful performance to meet the potential for success requirements for program participation" (AR 1); and second, Plaintiff had not satisfied all of the elements for waiver of the two years in business requirement because he did not have a record of successful performance on contracts sufficient to meet the waiver. (AR 2). With regard to the first reason, the SBA noted:

> Your claim that you have performed on construction work as late as 1999 is undocumented by you. Further, assuming you were to document work performed by your firm as late as 1999, this would still be six years ago, indicating your firm has been dormant since that time period. SBA cannot rely on work history dating back six or maybe 12 years ago in finding whether your firm currently maintains a successful operating history in order to demonstrate potential for success. Further, it appears that your firm has been unsuccessful in its attempts to procure contracts for at least the past four years. This indicates a lack of the potential to succeed in competing in the private sector if admitted to the 8(a) program.

*Id*. Concerning the second issue, the SBA stated:

> As fully explained above, your firm's lack of recent operations will not meet the requirement that you demonstrate that your firm has performed work in the immediate period prior to your application. SBA regulations are clear in this requirement as found under 13 C.F.R. [§] 124.107(b)(2) which states in part that '[t]he concern seeking a waiver under paragraph (b) must provide information on governmental and non governmental contracts in progress and completed . . .' The letters of reference you provided and work performance dating back six to twelve years ago were indicative of the firm's performance at that time. The firm's long period of dormancy dictates that the SBA have information on recent successful performance by the firm in order to grant a waiver in this area as stipulated under 13 C.F.R. [§] 124.107(b)(2).

*Id*. At the conclusion of the letter, the SBA informed Plaintiff that he had utilized his one available request for reconsideration and that he would have to wait twelve months before being eligible to reapply to the Business Development Program. *Id*.

11

On July 19, 2005 Plaintiff filed a Complaint for Review of Final Agency Action (Doc. No.

1), alleging that the SBA's denial of his application to the 8(a) Business Development Program

was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law . . .

."  Complaint at 6.  (Doc. No. 1).

### III.  Standard of Review

Plaintiff seeks review of the SBA's final agency action in accordance with Section 706 of

the APA.  This Court sits as an appellate court with respect to reviewing Plaintiff's claim.

*Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994).  Section 701 of the

APA provides that agency action is subject to judicial review except where there is a statutory

prohibition on review or where agency action is committed to agency discretion as a matter of

law.  5 U.S.C. § 701(a)(1),(2), *construed in Thomas Brooks Chartered v. Burnett*, 920 F.2d 634,

641-42 (10th Cir. 1990).  Because neither of these exceptions applies, the SBA's final agency

action is subject to judicial review.

The scope of judicial review of agency action under the APA is set forth in *Citizens to*

*Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971), *overruled on unrelated grounds by*

*Califano v. Sanders*, 430 U.S. 99, 105 (1977), and *Olenhouse,* 42 F.3d at 1572-76.  Judicial

review of informal[7] agency action is governed by Section 706 of the APA, which provides that a

"reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions

found" not to meet six separate standards.  *Overton Park*, 401 U.S. at 413, n. 30 (citing 5 U.S.C.

---

[7] Formal agency action, which is not at issue here, includes action in a case subject to a
rulemaking provision of the APA, 5 U.S.C. § 553, based on a public adjudicatory hearing, 5
U.S.C. § 556, 557, or "otherwise reviewed on the record of an agency hearing provided by
statute."  5 U.S.C. § 706(2)(E); *see Overton Park*, 401 U.S. at 414.

§ 706(2)).[8]  Informal agency action must be set aside if it fails to meet statutory, procedural or

constitutional requirements or if it was "arbitrary, capricious, an abuse of discretion, or otherwise

not in accordance with law."  *Id*. at 413-14 (construing § 706(2)(A)-(D), the "generally

applicable" standards); *Utah Shared Access Alliance v. Carpenter*, 463 F.3d 1125, 1134 (10th

Cir. 2006).  This standard requires the reviewing court to engage in a "substantial inquiry."

*Overton Park,* 401 U.S. at 415.

     The Tenth Circuit has consistently held that "the essential function of judicial review is a

determination of (1) whether the agency acted within the scope of its authority, (2) whether the

agency complied with prescribed procedures, and (3) whether the action is otherwise arbitrary,

capricious or an abuse of discretion."  *Utah Shared Access*, 463 F.3d at 1134 (quoting

*Olenhouse*, 42 F.3d at 1574); *CF & I Steel Corp. v. Economic Dev. Admin.*, 624 F.2d 136, 139

(10th Cir. 1980).  While only the third determination is in question here, the Tenth Circuit has

recognized that difficulty often arises in connection with judicial review under the "arbitrary or

---

     [8] "To the extent necessary to decision and when presented, the reviewing court shall
decide all relevant questions of law, interpret constitutional and statutory provisions, and
determine the meaning or applicability of the terms of an agency action.   The reviewing court
shall--
. . .
  (2) hold unlawful and set aside agency action, findings, and conclusions found to be--
     (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
     (B) contrary to constitutional right, power, privilege, or immunity;
     (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
     (D) without observance of procedure required by law;
     (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this
     title or otherwise reviewed on the record of an agency hearing provided by statute;  or
     (F) unwarranted by the facts to the extent that the facts are subject to trial *de novo* by the
     reviewing court.
In making the foregoing determinations, the court shall review the whole record or those parts of
it cited by a party, and due account shall be taken of the rule of prejudicial error."
5 U.S.C. § 706.

capricious" standard.   *Olenhouse*, 42 F.3d at 1574 (citing *American Petroleum Inst. v. EPA*, 540 F.2d 1023, 1028 (10th Cir. 1976)).

## A.  The "Arbitrary or Capricious" Standard

The duty of a court reviewing agency action under the "arbitrary or capricious" standard is to ascertain whether the agency examined the relevant data and articulated a rational connection between the facts found and the decision made.  *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 43 (1983); *Colorado Wild, Heartwood v. U.S. Forest Service*, 435 F.3d 1204, 1213 (10th Cir. 2006).  In reviewing the agency's explanation, the reviewing court must determine whether the agency considered all relevant factors and whether there has been a clear error of judgment.  *Colorado Wild,* 435 F.3d at 1213.  Agency action will be set aside "if the agency relied on factors which Congress has not intended for it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Motor Vehicle Mfrs.*, 463 U.S. at 43; *Colorado Wild*, 435 F.3d at 1213.  The Supreme Court also cautions, "[t]he reviewing court should not attempt itself to make up for such deficiencies: [it] may not supply a reasoned basis for the agency's action that the agency itself has not given."  *Motor Vehicle Mfrs.*, 463 U.S. at 43 (internal quotation marks omitted).

Because the "arbitrary and capricious" standard focuses on the rationality of an agency's decision-making process rather than on the rationality of the actual decision, "[i]t is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself."  *Motor Vehicle Mfrs.*, 463 U.S. at 50; *Colorado Wild*, 435 F.3d at 1213.

Therefore, the agency must make plain its course of inquiry, its analysis, and its reasoning, and the grounds upon which it acted must be clearly disclosed in, and sustained by, the record.  *Colorado Wild*, 435 F.3d at 1213*; American Petroleum*, 540 F.2d at 1029.  "After-the-fact rationalization by counsel in briefs or argument will not cure noncompliance by the agency with these principles." *Olenhouse*, 42 F.3d at 1575.

In addition to requiring a reasoned basis for agency action, the "arbitrary or capricious" standard requires an agency's action to be supported by the facts in the record.  In reviewing the administrative record for factual support, the Tenth Circuit has held that "informal agency action will be set aside as arbitrary if it is unsupported by 'substantial evidence.'"  *Id*. (quoting *Ass'n of Data Processing v. Bd. of Governors*, 745 F.2d 677, 683 (D.C. Cir. 1984).  The Tenth Circuit has explained that this is not an application of the "arguably more stringent standard of review applicable to formal agency action under § 706(2)(E)", but rather an "acknowledgment that '[w]hen the arbitrary or capricious standard is performing that function of assuring factual support, there is no *substantive* difference between what it requires and what would be required by the substantial evidence test, since it is impossible to conceive of a "nonarbitrary" factual judgment supported only by evidence that is not substantial in the APA sense.'"  *Olenhouse*, 42 F.3d at 1575 (quoting *Data Processing*, 745 F.2d at 684).  Evidence is substantial in the APA sense if it is "enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion to be drawn is one of fact."  *Data Processing*, 745 F.2d at 684 (citation omitted).  In the case of judicial review of agency action, the evidence is generally limited to the administrative record.  *Franklin Sav. Ass'n v. Director, Office of Thrift Supervision*, 934 F.2d 1127, 1137 (10th Cir. 1991) (citing *Camp v. Pitts*, 411 U.S. 138, 142 (1973)).

### B.  Review of the Administrative Record

The "substantial evidence" test requires the reviewing court to consider conflicts in the record and "define, specifically, those facts which it deems supportive of the agency decision if that is the court's resolution of the matter."  *Olenhouse*, 42 F.3d at 1575 (quoting *Hill v. Morton*, 525 F.2d 327, 328 (10th Cir. 1975)); *see Overton Park*, 401 U.S. at 415.  This requires a plenary review of the record as it existed before the agency.  *Rapp v. U.S. Dept. of Treasury, Office of Thrift Supervision*, 52 F.3d 1510, 1515 (10th Cir. 1995).  The district court may not rely on counsel's statements as to what was in the record; the district court itself must examine the administrative record and itself must find and identify facts that support the agency's action.  *Olenhouse,* 42 F.3d at 1576.  Finally, the Court notes that in its review of final agency action, "[a] presumption of validity attaches to the agency action and the burden of proof rests with the appellants who challenge such action."  *Colorado Health Care Ass'n v. Colorado Dept. of Social Services*, 842 F.2d 1158, 1164 (10th Cir. 1988).

### IV. *Analysis*

The SBA denied Plaintiff's application for entry into the 8(a) Business Development Program for two reasons: first, because Plaintiff had not demonstrated an "operating history and recent track record of successful performance to meet the potential for success requirements for program participation" (AR 1); and second, because Plaintiff had not satisfied all of the elements for waiver of the two years in business requirement.  (AR 2). The Court examines each of these conclusions in turn to determine if the SBA's decision-making process was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  5 U.S.C. § 706(2)(A).

### A.  *Potential for Success*

In assessing an application for admission to the Business Development Program, the SBA has justifiable concerns relating to the applicant's potential for success both prior to and following admission to the program.  The SBA regulations identify the various factors which are used to determine potential for success, including a requirement that the "applicant concern . . . must be in business in its primary industry classification for at least two full years immediately prior to the date of its 8(a) [Business Development] application, unless a waiver for this requirement is granted . . . ."  13 C.F.R. § 124.107.  The SBA is also to consider "the operating history of the concern [and] the concern's record of performance on previous Federal and private sector contracts . . . ."  13 C.F.R. § 124.107(d).

In the April 7, 2005 letter denying Plaintiff's application on reconsideration (AR 1-2), the SBA informed Plaintiff that Garay Enterprises "still does not demonstrate the operating history and recent track record of successful performance to meet the potential for success requirements for program participation . . . ."  (AR 1).  This stance is consistent with the position taken by the SBA in its prior information requests (AR 121-24, 169)[9] and initial denial of Plaintiff's application on February 7, 2005 (AR 101-04).  In its initial denial, and after reviewing the Plaintiff's contract documents referencing work from 1989 to 1993 (AR 138-61), the SBA had determined that the documentation provided by Plaintiff was inadequate and did not reflect "any operations in the recent past immediately prior to [the] application."  (AR 101).  In informing Plaintiff of his right to request reconsideration, the SBA specifically stated that Plaintiff should provide "copies of

---

[9] Plaintiff mistakenly characterizes the SBA's October 20, 2004 and November 22, 2004 letters as denials of his application (Opening Brief at 1) when it is clear that the SBA simply communicated its concerns to Plaintiff and requested additional documentation concerning Plaintiff's eligibility for the program.

recent contracts/invoices and letters of reference associated with [the] firm's recent performance

to demonstrate a successful track record of operations for [the] firm . . . ."  (AR 103).  While

Plaintiff did supplement his application, he failed to provide evidence of recent contracts or

invoices.  Instead, he included a letter of reference (AR 118) tied to a purchase order from 1995

(AR 71-74), a purchase order from 1996 (AR 144-47), and a list of projects noting work through

1999.  The recommendation letter itself, however, makes no reference to when Plaintiff

performed work for Mr. Lackey, the author of the letter, and the only contractual document in the

Administrative Record concerning Plaintiff's work for Mr. Lackey is a purchase order dated

November 16, 1995.  (AR 71-74).  The SBA argues that purchase orders are not proof of

performance on a contract, and may only be evidence of purchases of materials without any

further work.  Though it is impossible to tell solely from an examination of the purchase orders

whether they were tied to additional work performed by Plaintiff, the most favorable conclusion

the SBA could have arrived at would be that Plaintiff had performed work in 1995 and 1996.

Curiously, Plaintiff did not include any other documentation to substantiate his claim that he had

completed work through 1999, leaving a sizable gap in the record concerning the most critical

part of Garay Enterprises' operating history.

Nonetheless, even if the SBA were to accept at face value Plaintiff's claims concerning its

completed projects, the SBA could only conclude that Plaintiff had been successful for

approximately eleven years (1989-1999) before becoming unsuccessful or dormant for the

remaining six years (1999-2004) prior to his application.  As the SBA noted in its April 7, 2005

letter, the "SBA cannot rely on work history dating back six or maybe 12 years ago in finding

whether your firm currently maintains a successful operating history in order to demonstrate

18

potential for success." (AR 2). Based upon its review of the application, the SBA further

concluded that "it appears that [Plaintiff] has been unsuccessful in its attempts to procure

contracts for at least the past four years. This indicates a lack of the potential to succeed[.]" *Id.*

The evidence in the Administrative Record confirms that the SBA examined all of the relevant

data and articulated a rational connection between the facts in the Administrative Record and its

eventual decision. *Colorado Wild*, 435 F.3d at 1213. There has been no clear error of judgment

on the SBA's part. *Id.*

### B. Waiver of the Two Years in Business Requirement

As noted above, 13 C.F.R. § 124.107 requires an applicant firm to be in business "for at

least two full years immediately prior to the date of its" application to the 8(a) Business

Development Program. The SBA may waive this requirement if the five conditions delineated in

the SBA regulations are met. While Plaintiff overcame most of the SBA's earlier concerns as

outlined in the agency's initial denial of Plaintiff's application, he ultimately failed to satisfy the

requirement of having a "record of successful performance on contracts . . . ." 13 C.F.R. §

124.107(b)(1)(iv). The SBA regulations specifically require applicants seeking the waiver to

"provide information on governmental and nongovernmental contracts in progress and completed

(including letters of reference) in order to establish successful contract performance . . . ." 13

C.F.R. § 124.107(b)(2).

Plaintiff concedes that he does not satisfy the two years in business requirement. *See* AR

183 (showing no sales for the two years prior to Plaintiff's application to the SBA). Contrary to

Plaintiff's general argument that success in the two years preceding a firm's application to the

Business Development Program is unnecessary if the firm was successful at some earlier point, the

application of the waiver is ostensibly directed at new businesses which, though currently successful, have not been in operation for the requisite period of two years immediately prior to the date of application to the program.  Indeed, the language of the SBA regulations is unambiguous in requiring evidence of contracts "*in progress* and completed."  13 C.F.R. § 124.107(b)(2) (emphasis added).  Therefore, it is evident that a business must be successful at or near the time of application, and not simply at some point in its existence.  The SBA rationally concluded that Plaintiff's "long period of dormancy dictates that the SBA have information on recent successful performance by the firm in order to grant a waiver in this area . . . ."  (AR 2).

Beginning with its October 20, 2004 letter (AR 169-70), the SBA consistently requested that Plaintiff submit documentary evidence of Garay Enterprises' recent successful performance on contracts.  Plaintiff, however, did not produce any clear records of successful performance on contracts after 1993, thereby failing to demonstrate that he merited a waiver of the two years in business requirement.  As noted earlier, Plaintiff's supplementary materials as well as his arguments concerning what those materials prove, even when accepted at face value, do nothing more than extend Plaintiff's operational history from 1993 to 1999, still leaving a void of approximately six years prior to Plaintiff's application to the Business Development Program.  Given Plaintiff's admissions that: (1) he was unable to continue his business beginning in 1999 because of his family's medical issues (AR 17); (2) he was involved with a different venture from 2002-2003 (AR 127); and (3) he was unsuccessful in his bidding attempts for the remaining two years prior to his application to the SBA (AR 15), there is nothing in the Administrative Record to suggest that Plaintiff possessed the potential for success *at the time of application*, though Plaintiff may have been successful in the past.  Accordingly, the evidence in the Administrative

20

Record substantiates the SBA's argument that it examined all of the relevant data and articulated a rational connection between the facts in the Administrative Record and its eventual decision. *Colorado Wild*, 435 F.3d at 1213.  Again, there was no clear error of judgment on the part of the SBA.  *Id*.

## V.  Conclusion

Having reviewed all of the materials in the Administrative Record and the SBA's evaluation thereof, the Court finds that the SBA's final agency action was supported by substantial evidence and was the logical outcome of a thorough, rational assessment process.  In no way was it arbitrary, capricious, an abuse of discretion, or contrary to law.  *Utah Shared Access*, 463 F.3d at 1134.  Plaintiff has failed to meet his burden of proof and has not overcome the presumption of validity attached to the SBA's agency action.  *Colorado Health Care*, 842 F.2d at 1164.

THEREFORE, the Defendant Small Business Administration's decision is AFFIRMED, and judgment will be entered on behalf of the Small Business Administration in a separate judgment.

_____
SENIOR UNITED STATES DISTRICT JUDGE

21